**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Applicant,**

v.

**ROADWAY EXPRESS, INC.,
Respondent.**

**No. S Misc. 83–48.**

United States District Court,
N.D. Indiana,
South Bend Division.

Sept. 8, 1983.

David L. Slate, Washington, D.C., Laurie A. Young, Indianapolis, Ind., Emory J. Bailey, Detroit, Mich., Alice M. Craft, Indianapolis, Ind., for applicant.

Michael D. Cullins, Terrence F. Srsen, Akron, Ohio, for respondent.

MEMORANDUM AND ORDER

SHARP, Chief Judge.

I.

This case is before the court on the application of the Equal Employment Opportunity Commission (EEOC) for an order to show cause why a subpoena issued to respondent, Roadway Express, Inc., (Roadway) should not be enforced. Oral argument was heard before this court on July 15, 1983 in South

Bend, Indiana, and both parties have submitted briefs on the issues in dispute.

On July 15, 1981, Darrick Allen, the charging party, applied for a position as a truck driver with Roadway. Roadway declined to hire Allen allegedly because it was determined that he exceeded the company's established height standard for truck drivers. Subsequently, on December 21, 1981, Allen filed a charge with the EEOC's Indianapolis District Office alleging that Roadway, at its Elkhart, Indiana terminal, had committed and continued to commit unlawful employment discrimination against him on the basis of race in refusing to hire him as a truck driver.[1] The charge was numbered 053820627.

On March 8, 1982, the EEOC served notice and a copy of the charge on Roadway, thus commencing its investigation. The charge was forwarded to the Commission's Continued Investigation and Conciliation Unit (CIC). On June 22, 1982, the CIC investigator sent a questionnaire to Roadway requesting certain employment data.[2] Roadway submitted a partial response. Additional questionnaires were submitted to Roadway on September 17, 1982[3] and October 29, 1982[4]. Each was returned incomplete in that it did not contain all of the data requested.

After further correspondence, the EEOC issued a subpoena duces tecum, number IN–83–002, to Roadway. The subpoena requested the name, race and height of all persons currently employed at the Elkhart facility and certain information concerning applicants who were rejected for the same reason as the charging party. Roadway submitted all the information requested except for the information regarding the race of its current work force, information which Roadway has refused to submit to this date. Moreover, Roadway has made no attempt administratively to modify or quash the subpoena in accordance with the EEOC's procedural regulations set out in 29 C.F.R. § 1601.16(b) (1982). On May 12, 1983, the EEOC filed the application for order to show cause why the subpoena should not be enforced that is presently before the court.

Roadway objects to the breadth of the EEOC's subpoena. It maintains that a racial composite of all employees working at the Elkhart, Indiana facility is irrelevant because only one position has been filled at Elkhart during the last five years and seven of the present eleven Elkhart workers transferred in from other locations. Roadway further argues that use of racial statistics concerning people hired up to thirty-five years ago at different facilities by different managers serves no purpose other than to create unfair prejudice or to confuse the issues.

The EEOC counters with the arguments that (1) the subpoena was issued pursuant to a legal investigation and seeks evidence

1. Darrick Allen made the following specific allegations in EEOC Charge No. 053820627:

   I. I was informed by Respondent June 15, 1981 that I would not be hired for the position of Truck Driver for which I applied June 15, 1981. Respondent employs more than 15 persons.

   II. Respondent Terminal Manager, ————— (White) stated the reason I was not hired was because of my height.

   III. I believe that I am being discriminated against because of my race, Black, in that:

   A. I have five (5) years driving experience, and I am a certified truck driver. Respondent indicated that I was qualified and that I would be called.

   B. Respondent hired a white male for the position.

   C. I am 6′ 5″ tall and have had no problems or difficulties driving a truck. I was informed by employees of Respondent that there are white drivers employed who are my height or over.

2. The June 22, 1982 questionnaire requested copies of EEO–1 reports commencing with January 1, 1979; documents indicating the effective date of the company height standard; employment data for all positions for which the charging party could have been hired; and hiring data for all applicants rejected for the same reason as the charging party from January 1, 1981 to the present.

3. This questionnaire asked for essentially the same information as that previously required plus documents bearing on the number of years the height standard had been in effect.

4. In addition to information sought in prior requests, the questionnaire of October 29, 1982 sought height and racial information relative to all employees at the Elkhart facility.

relevant to the investigation of the charge, and (2) irrespective of the merits of any objections Roadway may raise, the court may not entertain any such objections by virtue of Roadway's failure to exhaust administrative review measures.

## II.

■ It has long been established that a party will normally be denied judicial relief for injury until administrative remedies have been exhausted. In one of the leading cases dealing with the exhaustion doctrine, *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–464, 82 L.Ed. 638 (1938), the Supreme Court stated:

> [T]he long settled rule of judicial administration [is] that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.

A prescribed administrative procedure for an appeal within the EEOC exists in this case. The EEOC regulations provide to a party the opportunity to raise objections to a subpoena.[5] Any subpoena is subject to internal review by means of a petition to revoke or modify the subpoena addressed to the District Director. Any petitioner who wishes to do so may appeal the determination of the Director. Nothing in the record before this court indicates that Roadway ever set forth its objections to the appropriate persons in any manner that can be construed as a petition to revoke or modify the subpoena.

■ The EEOC argues that Roadway's failure to exhaust administrative remedies precludes it from raising defenses to the judicial enforcement of the subpoena. In support of its argument, EEOC relies on *EEOC v. Cuzzens of Georgia, Inc.,* 608 F.2d 1062, 1064 (5th Cir.1979), a case factually identical with this action. The court, in *Cuzzens,* analogized the EEOC procedure with that employed by the National Labor Relations Board and concluded that an employer served with an EEOC subpoena and making no effort to exhaust the available administrative remedies may not thereafter challenge the subsequent judicial endorsement of that subpoena for any reason short of objections based on constitutional grounds. *Id.* at 1064. This court finds great merit in the position adopted by the Court of Appeals of the Fifth Circuit.

There are strong public policy considerations supporting the doctrine requiring exhaustion of federal administrative proceedings as a prerequisite to judicial relief. An instructive commentary on the rationale underlying this doctrine was presented by the Supreme Court in *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1979). Specifically, the reasons articulated by the *McKart* court for applying the doctrine are: (1) to avoid premature interruption of the administrative process; (2) to allow the agency to compile an accurate factual record, exercise its discretion or apply its expertise; (3) to improve the efficiency of the administrative agency; (4) to conserve scarce judicial resources since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (5) to give the agency a chance to discover and correct its own errors; and (6) to avoid the possibility that "frequent and

---

5. 29 C.F.R. § 1601.16(b) (1982), provides in pertinent part:

Any person served with a subpoena who intends not to comply therewith shall within five days (excluding Saturdays, Sundays and Federal legal holidays) after the date of service of the subpoena upon him or her, petition the General Counsel by mail to revoke or modify the subpoena ... The petition shall separately identify each portion of the subpoena with which the petitioner does not intend to comply and shall state, with respect to each such portion, the grounds upon which the petitioner relies ... the General Counsel shall make a determination upon the petition, stating reasons, and shall submit the petition and determination to the Commission for its review. The Commission shall review the petition and make a final determination .... *Provided, however,* That whenever the subpoena was issued by the District Director ... the petition to revoke or modify the subpoena shall be mailed to the Director, within the 5-day period specified above, who will make a determination on the petition. Any petitioner who wishes to appeal the determination of the Director· shall do so by following the standard procedures specified above ...

deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." See also, *Denberg v. U.S. R.R. Retirement Bd.,* 696 F.2d 1193 (7th Cir.1983) (Wood, J., dissenting).

Like most judicial doctrines, the requirement of exhaustion of remedies is riddled with exceptions *Patsy v. Florida Intern. University,* 634 F.2d 900, 903–04 (5th Cir. 1981). However, Roadway makes no attempt to place itself within any of the exceptions of the exhaustion doctrine. Roadway has presented no legal argument on the pivotal issue of exhaustion of remedies. Its sole reference to the issue is a single sentence in Respondent's Answer to Application to Show Cause which reads as follows:

8. The affidavit of Osma Spurlock, which is attached to the Application conclusively shows that it would be an utterly useless act for Respondent to petition for revocation or modification of the subpoena; therefore such action is not required by law.

This statement was made after the subpoena issued and after the EEOC's Application for Order to Show Cause Why a Subpoena Should Not Be Enforced was filed in this court.

██ Roadway does not enter into this matter as an individual proceeding pro se without benefit of counsel; it is a corporate entity with a legal staff aware of the importance of marshalling a persuasive argument in any action. While it is true that a party need not exhaust administrative remedies if to do so would be futile, *Porter County Chapter of Izaak Walton League, Inc. v. Costle,* 571 F.2d 359, 363 (7th Cir. 1978), *cert. denied,* 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 130 (1978), the single sentence contained in this record is neither the proper mode of presentation of such an argument nor is it, in substance, a particularly persuasive argument. By virtue of its own action (or inaction), Roadway has foreclosed its right to raise objections to the enforcement of the EEOC subpoena.

THEREFORE, IT IS THE ORDER OF THIS COURT that the Equal Employment Opportunity Commission's request for an Order directing Roadway Express, Inc. to comply with the subpoena shall be and hereby is GRANTED;

IT IS FURTHER ORDERED that Roadway Express, Inc., within fifteen days of the date of this Order, shall produce to the Indianapolis District Office of the Equal Opportunity Commission, any and all documents which reflect any or all of the following information for all persons employed at the Elkhart facility of Roadway Express, Inc. during any part of the period from June 15, 1981 to the date of compliance with this Order:

a. Name and race; and

b. height.

SO ORDERED.