EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

CITY OF MILWAUKEE, Defendant.

No. 95–Misc–56.

United States District Court, E.D. Wisconsin.

March 5, 1996.

1248

Barbara L. Henderson, EEOC, Milwaukee, WI, for plaintiff.

Mary Pat Ninneman, Quarles & Brady, Milwaukee, WI, for defendant.

## ORDER

WARREN, District Judge.

On August 16, 1995, the plaintiff, Equal Employment Opportunity Commission ("EEOC"), filed an application seeking enforcement of an administrative subpoena requiring the Police Department of the City of Milwaukee ("MPD") to comply with a subpoena issued and served by the EEOC. This dispute arises out of an attempt by the EEOC to investigate charges of race discrimination and retaliation charged against the Milwaukee Police Department ("MPD") by more than thirty (30) African–Americans. According to the EEOC, while the MPD has provided some of the requested information, it has refused to produce most of the documents and information requested by the EEOC. Subpoena number MK–95–006, received by the MPD on February 13, 1995, is the subject of this enforcement action.

On January 10, 1996, Magistrate Judge William E. Callahan, Jr. conducted a conference with parties in order to determine which subsections of the subpoena had not been complied with and were not going to be complied with, absent an Order from the

Magistrate Judge. The net result of the conference and ongoing submission of affidavits from the parties discussing compliance indicated that the following subsections of the subpoena were not being complied with and consequently the EEOC sought an Order of Enforcement. Those subpoena subsections are: B1–3; B7; C1; C7(d) and (g); C9–11; C15; C18–19; D6; E1; E3; E17; E38–39; and, E47. (Magistrate Judge's Order at 5.)

On February 8, 1996, Magistrate Judge Callahan issued an exhaustive and detailed Order addressing the enforcement issue as well as other procedural motions. Magistrate Judge Callahan engaged in a thorough discussion of each subsection even though the MPD failed to exhaust its administrative remedies and did not petition to revoke or modify the subpoena served upon it, which could have precluded the MPD from the right to raise objections to the enforcement of the EEOC subpoena. *EEOC v. Roadway Express, Inc.,* 569 F.Supp. 1526, 1529 (N.D.Ind.1983). The Magistrate Judge concluded that the "subpoena clearly relates to an investigation within the agency's authority" and "that the information and documents sought in subsections B1–B3; B7; C1; C7(d) and (g); C9–11; C18–19; E1; E3; E17; E38–39; and E47 of the subpoena, with the exceptions noted below are reasonably relevant to that inquiry" and "are neither too indefinite, nor unreasonably broad or burdensome." (Order at 22–23.) A clerical mistake on page 25 of the Order indicates that Magistrate Judge Callahan ordered compliance with subsection C15, however, the Court clarifies that the Magistrate Judge did not and has not ordered compliance with C15 due to that subsection's vagueness. Accordingly, the Magistrate Judge granted the EEOC's Motion to enforce those subsections of the subpoena MK–95–006 with noted exceptions.

On February 16, 1996, the City of Milwaukee filed an Objection to the Magistrate Judge's Order pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 13.02. Specifically, the City of Milwaukee objects to the confidentiality agreement which allows the City two calendar days "to seek a protective order from the Federal District Court in the event the EEOC makes known its intent to release confidential documents provided to the EEOC from the City during the course of the EEOC's pattern and practice investigation." (Objection at 1.) The City requests three business days in which to seek a protective order rather than two calendar days. On February 29, 1996, the EEOC filed a letter with this Court consenting to give the City three business days to seek a protective order. There are no other objections to the Order of Magistrate Judge Callahan.

■ Pursuant to 28 U.S.C. § 636(b)(1)(C), a district court must review de novo the recommendations of the Magistrate Judge to which either party timely objects. *See United States v. Raddatz,* 447 U.S. 667, 673–76, 100 S.Ct. 2406, 2411–12, 65 L.Ed.2d 424 (1980). The Court has reviewed the applicable law and Order of Magistrate Judge Callahan, and having received no objections, agrees with and adopts the Order of the Magistrate Judge dated February 8, 1996 with the following modifications:

1. The City of Milwaukee Police Department is not ordered to comply with subsection C15 of subpoena MK–95–006 (as incorrectly stated on page 25 of the Magistrate Judge's Order).

2. The City of Milwaukee Police Department will be granted three business days to seek a protective order opposing any proposed production of materials by the EEOC.

**SO ORDERED.**

### DECISION AND ORDER

CALLAHAN, United States Magistrate Judge.

On August 16, 1995, the applicant, Equal Employment Opportunity Commission, ("EEOC"), filed an application seeking enforcement of an administrative subpoena. The EEOC seeks an Order requiring a City of Milwaukee ("City") agency, the Milwaukee Police Department ("MPD"), "to comply with a subpoena issued and duly served by the EEOC."

## Background

In its application, the EEOC alleges that the instant action is one for enforcement of a subpoena issued pursuant to § 710 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–9. Jurisdiction is conferred upon this Court by §§ 706(f)(3) and 710 of Title VII, 42 U.S.C. §§ 2000e–5(f) and 2000e–9, which incorporate § 11 of the National Labor Relations Act, as amended, 29 U.S.C. § 161(2).

The EEOC avers in its application that, since December 1990, more than 30 African–Americans who are MPD officers or unsuccessful applicants for MPD employment have filed charges of discrimination with the EEOC's Milwaukee District Office. ("EEOC/MDO"). These individuals have alleged various forms of race discrimination and retaliation, including racial harassment, discrimination in hiring, promotion, job assignment, discipline, and termination. Again, according to the EEOC application, on December 3, 1993, the EEOC Milwaukee District Office's District Director, Chester V. Bailey, sent a letter to Grant Langley, Milwaukee City Attorney, informing him that the EEOC would be investigating the race discrimination charges against the MPD as part of a single pattern and practice investigation.

The EEOC avers that during the pattern and practice investigation it served the MPD with several requests for information, instructing the MPD to produce various categories of documents and to provide its position on each charge. According to the EEOC, while the MPD has provided some of the requested information, it has refused to produce "most of the information and documents sought by the EEOC/MDO".

As a consequence, on February 9, 1995, the EEOC served Subpoena No. MK–95–006, via certified mail, on MPD Chief of Police Philip Arreola. The subpoena required the MPD to produce certain categories of documents, to provide access to other documents, and, to provide its position on several charges. It also set due dates of February 21 and 24, March 10 and 24, and April 30, 1995, for responses. According to the EEOC application, the MPD received the subpoena on February 13, 1995.

The City admits that it did not file a "Petition to Modify or Revoke the Subpoena" within the time specified by 29 C.F.R. § 1601.16(b). It asserts, however, that it did not file a petition seeking administrative relief from the subpoena because it was engaging in negotiations with the EEOC concerning compliance with the subpoena.

Subpoena No. MK–95–006, which is the subject of this enforcement action, has a 20–page attachment which lists the information and materials sought by the EEOC under the subpoena. The information and materials are arranged under various category heads. These category heads, or sections, are identified as follows: **A. Request for Databases; B. Request for Access; C. Materials Past Due; D. Supplements to Materials Already Submitted; and, E. Materials Currently Submitted.** Each of the sections, in turn, has a number of subsections. In its application for enforcement of the subpoena, the EEOC abandoned its effort to obtain information and materials identified in the following subsections of the subpoena: A1–7; B4; C2–4; C6; C7(a)–(c); C7(e)–(f); E25–26; E28; E30; E36–37; E40; and, E50–56.

After the parties had an opportunity to file memoranda and affidavits in support of their respective positions on the EEOC's application, this Court conducted a conference with the parties on January 10, 1996, for the purpose of better defining which subsections of the subpoena had not been complied with and were not going to be complied with, absent an Order from this Court. In other words, the conference was conducted to determine if there were additional subsections of the subpoena that had been already complied with, or were going to be complied with, thereby obviating the need for this Court to rule on the EEOC's application for enforcement with respect to those subsections.

The conference produced the following results. In addition to those subsections identified above, of which the EEOC had earlier indicated that it was abandoning enforcement, the EEOC stated during the conference that it believed the City had fully responded to the following subsections, and,

therefore, there was no need for this Court to rule on their enforcement: C5; C8; C12; C13; C14; C16–17; C20; D2–5; E4–5(a)–(d); E6–16; E18–26; E28–37; E41–44; E57; and, E58.

At the conference the City represented to the Court that there were certain subsections of the subpoena that it had fully complied with. The City advised the Court and the EEOC that counsel would be submitting an affidavit executed by a person (or persons), in a position to aver, under oath, that to the extent such documents or information existed, they had been provided to the EEOC, thereby fully complying with the particular subsection of the affidavit in question.

Also at the conference, the City agreed to comply with the following subsections of the subpoena: B5 [1]–6; D1; E5(f)–(g); and, E46.

On February 6, 1996, the City filed with the Court affidavits executed by Melanie R. Swank and Dennis Wargolet. In them, the City advised, **inter alia**, that subsection C7(d) had been complied with, but there remained one file responsive to that subsection that had yet to be produced and, when it was produced, it would be in redacted form.

The City also advised that a number of subsections had been, and would be, complied with, but responsive documents would only be provided in redacted form. Those subsections are: B1–3; B7; C7(g); C9–11; C18–19; D6; E38–39 (one "medically related document of John Wesley has been withheld"); and, E47.

The City also advised that subsections D1; E2; E5(e), (f) and (g); E27; E45–46; E48; and, E49 would be (or had been) fully complied with.

The net result of all of the above is that there still remains certain subsections of the subpoena to which the City objects and for which the EEOC seeks an Order of Enforcement. These are subsections B1–3; B7; C1; C7(d) and (g); C9–11; C15; C18–19; D6; E1; E3; E17; E38–39; and, E47.

For purpose of clarity, the text of these particular subsections of the subpoena are set out below:

B1. For each police officer recruit class in 1991, 1992, 1993, 1994, and 1995, provide access to the complete, undeleted pre-employment background investigation file for each applicant who underwent a background investigation during the selection process.

B2. Provide access to all Field Training Officer and supervisory reports, performance evaluations and work location personnel files for all sworn personnel who served probation at any time from January 1, 1991[,] to the present.

B3. Provide access to all relevant Internal Affairs Division files created and maintained since January 1, 1989 to be determined after receipt of the Internal Affairs Division log.

\* \* \* \* \* \*

B7. For each police aide applicant who underwent a pre-employment background investigation in 1991, 1992, 1993, and 1994, provide access to the complete, undeleted background investigation file.

\* \* \* \* \* \*

C1. Submit all records, correspondence, and documents created by, collected by, and submitted to the Board of Inquiry which was appointed to handle complaints of discrimination at Districts Four and Five in October 1992.

\* \* \* \* \* \*

*EEOC Charge No. 260–93–0694 (Wells)*

C7. On November 18, 1994, Lieutenant Lenard Wells amended EEOC Charge No. 260–93–0694 to include the following:

I was further retaliated against when, after criticizing the Chief of Police on October 29 and 31, 1994, for race discrimination I was (a) notified on November 4, 1994, that I was being transferred effective November 13, 1994, (b) subjected to a hostile work environment at District Six on No-

---

1. According to the affidavit of Melanie Swank filed with the Court on February 6, 1996, the

EEOC no longer is demanding a response to subsection B5.

vember 8, 1994, and (c) notified on November 15, 1994, that I am being investigated for alleged Rules violations.

Provide a response to each of the allegations in this amendment, to specifically include the following:

\* \* \* \* \* \*

d. Copies of any and all documents created since January 1, 1993, which reference reports or complaints of a hostile work environment at District Six, including PI–21's, memoranda, investigative summaries and reports, and any and all written records of the disposition of each report or complaint.

\* \* \* \* \* \*

g. Complete copies of all Internal Affairs and work location personnel files for Lieutenant Wells and Captain Peter Pochowski.

\* \* \* \* \* \*

*EEOC Charge No. 260–95–0200 (McGee).*

C9. Provide a copy of Officer McGee's complete Internal Affairs file, as well as all other investigative reports which have been created with respect to Mr. McGee.

C10. Provide copies of the complete Internal Affairs files for Police Officers Lynne Kresse and Julie A. Horter.

C11. Provide copies of all documents which reference complaints about Sergeant Gary Meyer by his subordinate employees since January 1, 1992, including all PI–21's, investigative documents, reports, and dispositions.

\* \* \* \* \* \*

*EEOC Charge No. 260–95–443 (Payne)*

\* \* \* \* \* \*

C15. Provide documents showing that each Detective assigned to Homicide since April 9, 1991, was better qualified than Detective Payne.

\* \* \* \* \* \*

*EEOC Charge No. 260–95–0418 (Holmon)*

\* \* \* \* \* \*

C18. For each sworn officer to whom a drug test was administered since January 1, 1991[,] (except for any routine drug test administered to all officers in a given bureau or district), provide the following:

a. Name, race, rank, and work assignment at the time of the drug test;

b. Date the drug test was administered;

c. Reason for the drug test;

d. Name, rank, and work assignment of the individual who authorized the test;

e. Result of the test; and,

f. Action taken as a result of the test.

C19. If Officer Holmon was subjected to a criminal investigation on or about October 27, 1994, provide the following:

a. Nature of the alleged crime for which Officer Holmon was investigated;

b. How the Police Department learned of the alleged crime;

c. Name, rank, and work assignment of the individual who authorized the criminal investigation;

d. Written policies, procedures, and guidelines governing the conduct of criminal investigations of sworn personnel;

e. Beginning and ending dates of the criminal investigation of Officer Holmon;

f. Result of the criminal investigation of Officer Holmon; and,

g. Identification of all other sworn personnel who were subjects of criminal investigations since January 1, 1991, including:

(1) Name, race, rank, work assignment at the time of the criminal investigation;

(2) Beginning and ending dates of the criminal investigation;

(3) Alleged crime for which the member was investigated;

(4) Result of the investigation, and

(5) If the member's personal property was released to the member.

\* \* \* \* \* \*

D6. For each complaint of sexual harassment against a sworn member of the Police Department received from July 28, 1993[,] to the present, provide the following:

a. Name, race, and sex of complainant;

b. Rank and assignment of complainant at time of complaint;

c. Name, race, and sex of accused;

d. Rank and assignment of accused at time of complaint;

e. Date of complaint; and

f. Disposition, with date of disposition.

\* \* \* \* \* \*

E1. For the period January 1, 1989[,] to the present, submit copies of all analyses, reports, validation studies and related documentation covering selection procedures for hiring, promotion, transfer, assignment, demotion, and termination (voluntary and involuntary)[,] as required by the Uniform Guidelines on Employee Selection Procedures.

\* \* \* \* \* \*

E3. Provide copies of all reports and analyses authorized, prepared, and received by the Chief of Police since January 1, 1989, on the following topics[,] and which were not provided in response to Item E1. above:

a. Recruit and Hire of Police Aides and Police Officers and the selection process (including any part thereof) for these position[s];

b. Assignments and transfers of Police Officers;

c. Promotions;

d. Administration of disciplinary actions (including Alternative Discipline);

e. Retention of minority and/or female Police Officers;

f. Discriminatory and/or hostile work environment.

\* \* \* \* \* \*

E17. In chronological order[,] beginning with January 1, 1991[,] and extending to the present, identify each vacant position in the Tactical Enforcement Unit which was posted and to which a Police Officer was assigned. For each posted vacancy identified, provide the following:

a. Date of posting;

b. Copy of posting;

c. Brief description of each component in the selection process, including the role of the Internal Affairs Division, if any;

d. Criteria used in the selection process;

e. Name, race, sex, and date of appointment of each Police Officer who requested consideration for the position;

f. Name, race, sex, race, and work assignment of all recommending and selecting officials; and

g. Selectee's name, race, sex, date of appointment, and beginning and ending dates of assignment to the Tactical Enforcement Unit.

\* \* \* \* \* \*

E38. Submit all documents (including, but not limited to complaints, reports of complaints, notes about reported complaints, investigative records, and memoranda) referring to citizen complaints against Detective Wesley created since August 22, 1993.

E39. Submit a copy of the complete work location personnel file for Detective John Wesley, including (but not limited to) work location records maintained during the periods Detective Wesley worked at the Police Training Academy and the Criminal Investigation Bureau.

\* \* \* \* \* \*

E47. Identify individuals on the 1991 Police Sergeant eligibility list who formally or informally complained of discriminatory employment practices, with the name of the complainant and date of the

complaint. Provide copies of the documents referring to each complaint.

\* \* \* \* \* \*

Before turning to the merits of this action, there are several procedural motions outstanding which need to be addressed. Each of the parties has filed extensive materials in support of their respective positions on the issues in this case. These materials include memoranda of law, as well as affidavits, together with exhibits.

On October 31, 1995, the EEOC filed a "Motion for Leave to File a Reply Brief" exceeding 15 pages. The City, in turn, filed a "Motion to Strike the EEOC's Reply Brief and to Deny its Motion for Leave to File the Reply Brief Exceeding 15 Pages." In support of its Motion, the City filed an Affidavit of Bruce B. Schrimpf. Responding to the City's Motion, the EEOC filed a "Motion to Strike the Affidavit of Bruce B. Schrimpf."

The EEOC's "Motion for Leave to File a Reply Brief Exceeding 15 Pages" will be **GRANTED** and the City's "Motion to Strike the Reply Brief" will be **DENIED.** Similarly, the EEOC's "Motion to Strike the Affidavit of Bruce B. Schrimpf" will be **DENIED.** All materials presently on file with this Court will be considered in rendering a decision in this matter.

## Analysis

The City objects to the enforcement of the subpoena on various grounds. As the EEOC points out, however, (and as is conceded by the City), the City has made no attempt administratively to modify or quash the subpoena in accordance with the EEOC's procedural regulations set out in 29 C.F.R. § 1601.16(b). For this reason alone, the EEOC argues that the subpoena should be enforced in its entirety because the City's failure to exhaust administrative remedies precludes it from raising defenses to the judicial enforcement of the subpoena.

29 C.F.R. § 1601.16(b) provides, in pertinent part, that:

Any person served with a subpoena who intends not to comply therewith shall within five days (excluding Saturdays, Sundays and federal legal holidays) after the date of service of the subpoena upon him or her, petition the General Counsel by mail to revoke or modify the subpoena ... The petition shall separately identify each portion of the subpoena with which the petitioner does not intend to comply and shall state, with respect to each such portion, the grounds upon which the petitioner relies ... The General Counsel shall make a determination upon the petition, stating reasons, and shall submit the petition and determination to the Commission for its review. The Commission shall review the petition and make a final determination ... Provided, however, That whenever the subpoena was issued by the District Director ... the petition to revoke or modify the subpoena shall be mailed to the Director, within the five day period specified above, who will make a determination on the petition. Any petitioner who wishes to appeal the determination of the Director shall do so by following the standard procedures specified above ...

As noted, it is undisputed that the City failed to administratively challenge the instant subpoena. To be sure, the City argues that its failure to do so should be excused "because it had been engaged in serious negotiations with the EEOC/MDO prior to the service of the subpoena at issue.... [and that] ... [t]he purpose of these negotiations was to reach an agreement by which the City could comply with the EEOC/MDO's demands relating to its pattern and practice investigation, while at the same time protecting the confidential and sensitive nature of many of the documents demanded." (City's Memorandum, p. 17). The fact of the matter remains, however, that after the subpoena was served upon the City, i.e., on or about February 13, 1995, the City did not pursue any relief via the administrative process.[2]

---

**2.** The Court cannot very easily excuse the City's failure to follow administrative procedures in challenging the subpoena. After all, the City is not akin to a **pro se** litigant. To the contrary, it is represented by able counsel. Moreover, the

City did administratively challenge an earlier EEOC subpoena by filing a Petition to Modify the Subpoena. In that earlier proceeding, the EEOC Executive Secretariat in Washington, D.C., denied the City's petition on December 12, 1994.

■ It is well established that a litigant will normally be denied judicial relief for injury until administrative remedies have been exhausted. And where, in the context of an administrative subpoena enforcement action, a litigant has failed to exhaust its administrative remedies in challenging the subpoena, such litigant is thereby precluded from raising defenses to the judicial enforcement of the subpoena. *EEOC v. Roadway Express, Inc.*, 569 F.Supp. 1526, 1528 (N.D.Ind.1983). See also, *EEOC v. Cuzzens of Georgia, Inc.*, 608 F.2d 1062 (5th Cir.1979); *EEOC v. County of Hennepin*, 623 F.Supp. 29 (D.Minn.1985).

■ As the Court noted in *Roadway Express, Inc.*, there are strong public policy considerations supporting the doctrine requiring exhaustion of federal administrative proceedings as a prerequisite to judicial relief. They are: "(1) to avoid premature interruption of the administrative process; (2) to allow the agency to compile an accurate factual record, exercise its discretion or apply its expertise; (3) to improve the efficiency of the administrative agency; (4) to conserve scarce judicial resources since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (5) to give the agency a chance to discover and correct its own errors; and, (6) to avoid the possibility that 'frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.'" *Roadway Express, Inc.*, at 1528–29.

■ While it may be true that there are exceptions to the exhaustion of remedies judicial doctrine, see, *Patsy v. Florida International University*, 634 F.2d 900, 903–04 (5th Cir.1981),[3] the City has not demonstrated that it is the beneficiary of any of those exceptions.

Rather than try to place itself into one of the exceptions to the exhaustion requirement, the City attempts to take the subpoena head-on by asserting that "[c]ertain sections of the EEOC/MDO subpoena are too indefinite, not reasonably relevant to the charges of the investigation and are unduly burdensome in that compliance would seriously threaten the normal operations of the Milwaukee Police Department." (Response to Application for Enforcement of Administrative Subpoena, ¶ 12). But these are objections that should have more properly been invoked by way of a petition to revoke or modify the subpoena under 29 C.F.R. § 1601.16(b). Accordingly, the City is in pretty much the same predicament as was the respondent in *EEOC v. Roadway Express, Inc.* Like the respondent in that case, the City, by virtue of its own action (or inaction), "... has foreclosed its right to raise objections to the enforcement of the EEOC subpoena." *Roadway Express, Inc.*, at 1529. With that said, one might be tempted to order enforcement of the EEOC subpoena without any further discussion or analysis. I decline to succumb to that temptation. I believe that the parties and the public are entitled to a more thorough treatment of the issues presented in this action.

Although there are a number of subsections of the subpoena to which the City objects, (as more particularly listed above), the City has cogently distilled the issues in this action to come down to the following:

> The major focus of this enforcement action, and the information the City objects to disclosing includes:
>
> 1. Whether the EEOC/MDO should be given access to the files of on-going Internal Affairs investigatory files;

---

3. Traditionally, exhaustion is not required when: (1) the prescribed administrative remedy is plainly inadequate because either no remedy is available, the available remedy will not give relief commensurate with the claim, or the remedy would be so unreasonably delayed as to create a serious risk of irreparable injury; (2) when the claimant seeks to have a legislative act declared unconstitutional and administrative action will leave standing the constitutional question; (3) when the question of the adequacy of the administrative remedy is for all practical purposes coextensive with the merits of the plaintiff's claim, such as when, for example, the plaintiff contends that the administrative system itself is unlawful or unconstitutional in form or application; or (4) when it would be futile to comply with the administrative procedures because it is clear that the claim will be rejected. *Patsy*, at 903–04.

2. whether the City/MPD is required to disclose names and identifying information of confidential informants, when those informants have been given assurances that the information they gave would be kept confidential; in light of the fact that the EEOC/MDO has made clear that it intends to re-interview those informants;

3. whether certain documents containing information relating to juvenile records, medical records, records of sexual abuse/assault, and allegations of illegal drug use by members must be disclosed to the EEOC/MDO by the City/MPD; and,

4. whether entry level selection materials should be disclosed absent a confidentiality agreement.

City's "Memorandum in Opposition to EEOC Application for Enforcement of Administrative Subpoena," p. 4.

The City argues, **inter alia,** that were the EEOC to be given access to any ongoing Internal Affairs investigatory files, such could severely compromise ongoing investigations. Moreover, the City argues that were it to provide any information that it had received during applicant background investigations from individuals who were promised confidentiality in return for providing such information, such would forever render promises of confidentiality in such background investigations a nullity. It would then effectively be prevented from gaining important information relating to applicants and this would severely threaten the operations of the MPD's business.

Similarly, the City argues that if the EEOC were to be provided information contained in the ongoing Internal Affairs investigatory files, such disclosure would make it impossible for the Internal Affairs Division to conduct its investigations of MPD Rule violations and/or alleged criminal acts of MPD members. In other words, the disclosure of such information (together with the potential interviewing of the sources of such information by the EEOC) "would threaten the normal operations of ... [the business] of the MPD." *EEOC v. Bay Shipbuilding Corp.,* 668 F.2d 304, 313 (7th Cir.1981). In essence,

the City argues that to disclose the above-described information would threaten its normal operations by rendering its promises of confidentiality a sham.

In response to the City's concerns, the EEOC notes that subpoena enforcement proceedings are summary in nature, and the federal court's role is "sharply limited." *EEOC v. Tempel Steel Co.,* 814 F.2d 482, 485 (7th Cir.1987). Indeed, the Seventh Circuit most recently had an opportunity to address this issue in *EEOC v. Quad/Graphics, Inc.,* 63 F.3d 642 (7th Cir.1995). In that case, the Court stated:

As a general proposition, courts enforce an administrative subpoena if it seeks reasonably relevant information, is not too indefinite, and relates to an investigation within the agency's authority ...

*Quad/Graphics, Inc.,* at 645.

The cases cited by the City in support of its excessive burden argument do not involve precisely the issue here presented, i.e., whether revealing confidential information will threaten the normal operations of the respondent's "business" of law enforcement. Rather, those cases deal with the more commonly confronted situation of a commercial business having its operations severely impacted by the time needed to be taken by personnel to comply with the subpoena. E.g., *EEOC v. A.E. Staley Mfg. Co.,* 711 F.2d 780 (7th Cir.1983); *EEOC v. Bay Shipbuilding Corp.,* 668 F.2d 304 (7th Cir.1981); *EEOC v. Quad/Graphics, Inc.,* 868 F.Supp. 1078 (E.D.Wis.1994). They are, therefore, of limited assistance in this case. Of more assistance are *EEOC v. Associated Dry Goods Corp.,* 449 U.S. 590, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981) and *University of Pennsylvania,* 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990).

In *Associated Dry Goods,* the Supreme Court held that an employer has no categorical right to refuse to comply with an EEOC subpoena, without the employer first being assured that the information supplied will be held in absolute secrecy. Instead, the employer-respondent was entitled only to assurance that each employee filing a charge against it would see information in no file

other than his or her own, consistent with 42 U.S.C. § 2000e–5(b). *Associated Dry Goods*, at 604, 101 S.Ct. at 825.

More recently, the Supreme Court decided *University of Pennsylvania v. EEOC*, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). In that case, the Court rejected a claim by the University of Pennsylvania that the EEOC should not have access, via subpoena, to "confidential peer review information." The University had argued, **inter alia**, that the Court should recognize a qualified common-law privilege against disclosure of confidential peer review materials and to require a judicial finding of particularized necessity of access, beyond a showing of mere relevance, before peer review materials are disclosed to the Commission. The Court, noting that Congress had provided some protection of confidentiality for the subpoenaed material under 42 U.S.C. § 2000e–8(e), upheld the orders of the lower court compelling disclosure to the EEOC. It stated:

> ... [W]e stand behind the breakwater Congress has established: unless specifically provided otherwise in the statute, the EEOC may obtain "relevant" evidence. Congress has made the choice. If it dislikes the result, it of course may revise the statute.

*University of Pennsylvania*, at 194, 110 S.Ct. at 585.

Turning from the Supreme Court to cases decided by the Seventh Circuit, in *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304 (7th Cir.1981), the Court rejected an argument that the EEOC subpoena was overly broad because it sought "supposedly confidential information concerning management and executive employees." *Bay Shipbuilding Corp.*, at 312. In doing so, the Court stated:

> ... [A]s held in *EEOC v. University of New Mexico*, supra, 504 F.2d [1296] at 1303, [ (10th Cir.) ], confidentiality is no excuse for noncompliance since Title VII imposes criminal penalties for EEOC personnel who publicize information obtained in the course of investigating charges of employment discrimination. 42 U.S.C. §§ 2000e–5(b), 2000e–8(e).

*Bay Shipbuilding Corp.*, at 312.

In *EEOC v. Illinois Department of Employment Security*, 995 F.2d 106 (7th Cir.

1993), the Seventh Circuit reversed the lower court's refusal to enforce an EEOC subpoena. The EEOC in that case was seeking the transcript of an unemployment compensation hearing, believing it contained evidence relevant to an investigation the EEOC was conducting. The Illinois Department of Employment Security ("IDE") refused to provide a copy of the transcript, citing a state statute making unemployment compensation proceedings confidential. The District Court refused to order the IDE to give the EEOC a copy, ruling that the state agency's interest in confidentiality outweighed the federal agency's interest in conducting its investigation.

In reversing the District Court, the Seventh Circuit held:

> Federal common law recognizes many privileges, and the traditional ones are available even though a federal agency invokes a broad statutory power to gather evidence. E.g., *Upjohn Co. v. United States*, 449 U.S. 383, 397–99 [101 S.Ct. 677, 686–87, 66 L.Ed.2d 584] (1981) (summonses issued by the IRS under 26 U.S.C. § 7602 are subject to established privileges such as the attorney work-product doctrine). *University of Pennsylvania v. EEOC*, 493 U.S. 182 [110 S.Ct. 577, 107 L.Ed.2d 571] (1990), warns against augmenting the list. A University contended that the disclosure of details about evaluations of candidates for tenure would jeopardize the advancement of knowledge by interfering with candid, and thus accurate, assessments of academic achievements and potential. The Court conceded that disclosure might have such effects but concluded that existing law nonetheless entitled the Commission to obtain the information. Courts should honor statutes granting access to information. *University of Pennsylvania* joined other recent decisions that have declined opportunities to create new evidentiary privileges or expand old ones. E.g., *Trammel v. United States*, 445 U.S. 40 [100 S.Ct. 906, 63 L.Ed.2d 186] (1980); *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).

*Illinois Dept. of Employment Security,* at 107–08.

Similarly, in *EEOC v. County of San Benito,* 818 F.Supp. 289 (N.D.Ca.1993), the District Court enforced three administrative subpoenas served by the EEOC upon the respondent, which subpoenas required the County of San Benito to produce documents relevant to the EEOC's investigation of three charges of sex discrimination and retaliation filed against the County. Each of the subpoenas sought, among other documents, a copy of the County's report recommending disciplinary action against one of the complaining party's supervisors and the personnel records of that supervisor, including performance evaluations, counseling memoranda, time and attendance records, and awards.

Like the City in the instant case, the respondent in *County of San Benito* failed to file a petition to revoke or modify the subpoenas served upon it. Nevertheless, the County argued against enforcement of the subpoenas on the grounds that state law required a county to refuse to disclose to the Commission a peace officer's personnel records and information obtained from those records. *County of San Benito,* at 290.

In rejecting the County's argument, the Court ruled that California's confidentiality laws relating to peace officers did not provide a basis for declining to comply with the EEOC subpoenas. In doing so it noted that "the courts have decided that the federal Equal Employment Opportunity Commission's mandates preempt state restrictions," citing *Garrett v. City and County of San Francisco,* 818 F.2d 1515, 1519, n. 6 (9th Cir.1987); *Breed v. United States District Court for the Northern District of California,* 542 F.2d 1114, 1115 (9th Cir.1976); *Carr v. Monroe Mfg. Co.,* 431 F.2d 384, 388 (5th Cir.1970); *Dorsten v. Lapeer County General Hospital,* 88 F.R.D. 583, 585–86 (E.D.Mich.1980); *EEOC v. Bay Shipbuilding Corp.,* 668 F.2d 304, 312 (7th Cir.1981); *EEOC v. Roadway Express, Inc.,* 750 F.2d 40, 43 (6th Cir.1984); and, *Kerr v. United States District Court for the Northern District of California,* 511 F.2d 192, 197 (9th Cir.1975).

■ There may be some risk that disclosure of the subpoenaed information will jeopardize the unfettered free flow of information from confidential sources to the MPD regarding the background of applicants and regarding ongoing internal investigations at the MPD. But, as was the case in *University of Pennsylvania,* existing law nonetheless entitles the EEOC to obtain the subpoenaed information if: (1) the subpoena relates to an investigation within the agency's authority; (2) the information sought is reasonably relevant to the inquiry;[4] and, (3) the demand is not too indefinite or unreasonably broad or burdensome. *EEOC v. Quad/Graphics, Inc.,* supra; *United States v. Westinghouse Electric Corp.,* 788 F.2d 164, 167 (3rd Cir.1986).

I am not insensitive to the concerns of the City over what impact disclosure to the EEOC of "confidentially obtained" information could have on the City's being able to obtain such information in the future. But, if the above stated subpoena enforcement standards are met, production of such information is required. Were that not the case, an entity such as the Milwaukee MPD could unilaterally thwart a legitimate investigation into its employment practices by merely invoking the cloak of confidentiality. An entity that is the subject of a legitimate investigation surely cannot be allowed to control the scope of that legitimate investigation.

This is not to say that the EEOC is free to do with the subpoenaed information and documents whatever it wishes. To the contrary, the provisions of 42 U.S.C. §§ 2000e–5(b) and 2000e–8 make it a criminal offense for an officer or employer of the EEOC to make public any information obtained during an investigation, except when the matter goes to litigation. Furthermore, the provisions of 29 C.F.R. § 1601.22 and 5 U.S.C. §§ 552(b)(6) and (b)(7), likewise regulate severely the disclosure of information and documentation

---

4. And, for purposes of an administrative subpoena, the notion of relevancy is a broad one.

*EEOC v. Elrod,* 674 F.2d 601, 613 (7th Cir.1982).

which the EEOC would receive via this subpoena.

Finally, section 23.9 of the EEOC Compliance Manual requires EEOC investigators to counsel witnesses during witness interviews that they have the right to make their statements in confidence. If they make such an election, the witness must sign a "Confidentiality Election Statement."

In sum, if the information demanded in a particular subsection of the subject EEOC subpoena relates to an investigation within the agency's authority, is reasonably relevant to the inquiry, and the demand is not too indefinite or unreasonably broad or burdensome, the enforcement of that particular subsection of the subpoena should be ordered.

 I find that the subpoena clearly relates to an investigation within the agency's authority. The EEOC is conducting a pattern and practice investigation that stems from the filing of charges by more than 30 African–Americans who are MPD officers or unsuccessful applicants for MPD employment, alleging various forms of race discrimination and retaliation, including racial harassment, discrimination in hiring, promotion, job assignment, discipline, and termination.

As to the second element, I find that the information and documents sought in subsections B1–B3; B7; C1; C7(d) and (g); C9–11; C18–19; E1; E3; E17; E38–39; and, E47 of the subpoena, with the exceptions noted below, are reasonably relevant to that inquiry. Furthermore, the information and documents demanded under each of those subsections of the subpoena are neither too indefinite, nor unreasonably broad or burdensome. Accordingly, the EEOC's Motion to enforce those subsections of the subpoena, with the exceptions noted below, will be **GRANTED.**

According to the City, the documents identified in subsection C7(g) include the medical record (i.e., a psychological file), of a "third party not involved in any of the discrimination complaints being investigated by the EEOC/MDO." (City's Memorandum, p. 15). Similarly, the documents identified in subsection C9 include the medical records of Mrs. McGee, and, as such, are the medical records

of "neither a complainant [n]or of a comparatur." (City's Memorandum, p. 15).

At the January 10, 1996, conference, the EEOC took the position that it did not know whether the above-stated documents were relevant or not. Therefore, because those documents, for whatever reason, had found their way into the files identified in subsections C7(g) and C9, the EEOC felt it was entitled to their production. I disagree.

I fail to see how these medical records of third parties are reasonably relevant to the inquiry being conducted by the EEOC. Accordingly, the EEOC's application for an order enforcing or compelling production of these particular documents from the files identified in subsections C7(g) and C9 is **DENIED.**

Subsection D6 of the subpoena seeks information relating to **sexual harassment** complaints against any sworn members of the police department received from July 28, 1993, to the present. According to the application for enforcement of administrative subpoena, the EEOC avers that it is conducting a pattern and practice investigation into **race discrimination** charges against the MPD. On its face, the information sought under subsection D6 would appear to be beyond the scope of the investigation and, therefore, not reasonably relevant. Yet in its reply brief, the EEOC represents that "[t]he information now requested is required to resolve the charges of Officer Lovett and Officer Allen Lane, in which they allege that the MPD investigated charges of sexual harassment against them but not against similarly-situated Caucasian officers." (EEOC's Reply Memorandum, p. 36). Although it may be a close call, based on the representation of the EEOC, I find that the information sought in subsection D6 is reasonably relevant to the inquiry. Accordingly, the EEOC's motion to enforce subsection D6 will, likewise, be **GRANTED.**

The same cannot be said of subsection C15. As was discussed with the parties at the conference on January 10, 1996, I find this particular demand to be too indefinite and ambiguous. Therefore, enforcement of

this subsection of the subpoena will be **DE-NIED.**

Whether this Court has the authority to order the EEOC, over its objection, to maintain the confidentiality of the subpoenaed information and documents more strictly than required by current law is debatable. See, e.g., *EEOC v. C & P Telephone Co.*, 813 F.Supp. 874, 876 (D.C.Cir.1993). In this action, however, the EEOC has stated that it is willing to abide by the terms of the confidentiality agreement that it proposed to the City on March 2, 1995. A copy of that proposed agreement is attached to the August 16, 1995, Affidavit of Rita J. Burns as Exhibit F. I have reviewed that proposed agreement. Because the EEOC has stated its willingness to abide by that agreement, and because I believe the provisions of the proposed agreement are reasonable, **IT IS HEREBY FURTHER ORDERED** that Sections III–12; III–13; III–14; III–15; IV–16(a)–(b); IV–17; IV–18(a)–(h); IV–19; and, IV–20 of that proposed agreement shall be applicable to the information and documents, the production of which are governed by this Order of Enforcement.

**NOW, THEREFORE, IT IS ORDERED** that the EEOC's application to enforce Subpoena No. MK–95–006 is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Respondent, the City of Milwaukee, be and hereby is directed to comply with subsections: B1–B3; B7; C1; C7(d) and (g) (with the exception noted in this Decision); C9 (with the exception noted in this Decision); C10–11; C15; C18–19; D6; E1; E3; E17; E38–39; and, E47 of EEOC Subpoena No. MK–95–006.

**IT IS FURTHER ORDERED** that Respondent, City of Milwaukee, supply the EEOC with the requested information and documents within six weeks of the date of this Decision and Order.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and Local Rule 13.02 (E.D.Wis.), whereby written appeal from any order herein or part thereof may be filed within ten days hereof.

**SO ORDERED.**