**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Applicant,**

v.

**CITY OF MILWAUKEE, Respondent.**

**No. 99–MISC–5.**

United States District Court, E.D. Wisconsin.

June 22, 1999.

Dennis R. McBride, Milwaukee, WI, for Applicant.

Leonard A. Tokus, Milwaukee, WI, for Respondent.

### DECISION AND ORDER

ADELMAN, District Judge.

On March 4, 1999, the Equal Employment Opportunity Commission filed an application seeking enforcement of seven administrative subpoenas issued and served by the EEOC upon the City of Milwaukee.

## I. BACKGROUND

The following facts are undisputed by the parties, as evidenced by the Application for Enforcement filed by the Com-

mission, the Response to Application for Enforcement filed by the City, and the documents attached to the Affidavit of Dennis R. McBride filed in support of the Commission's application.

Under 42 U.S.C. § 2000e–6(e), the EEOC is the federal agency charged with administering and enforcing Title VII of the Civil Rights Act of 1964, including, among other things, the investigation of charges of unlawful employment discrimination.

The Milwaukee Police Department (MPD), Milwaukee Fire Department (MFD), and City of Milwaukee Fire & Police Commission (FPC) are agencies of the City, which is a Wisconsin municipal corporation. Each has more than fifteen employees. During all relevant times, the City has continuously been and is now an employer engaged in an industry affecting commerce within the meaning of § 701(b) of Title VII, 42 U.S.C. § 2000e(b). The actions complained of occurred within the State of Wisconsin and the Eastern District of Wisconsin.

Among several discrimination charges pending with the EEOC against the City, the EEOC's Milwaukee District Office (MDO) is currently investigating the following: (a) *Earl T. Hawkins v. City of Milwaukee Fire & Police Commission,* EEOC charge number 260–97–0065, in which the charging party alleges that the FPC discriminated against him on the basis of his race; (b) *Brotherhood of Firefighters v. City of Milwaukee and Milwaukee Fire & Police Commission,* EEOC charge number 260–97–0100, in which the charging party alleges that the MFD discriminated against a class of individuals on the basis of their race; (c) *Christopher Miller v. City of Milwaukee Police Department,* EEOC charge number 260–98–0626, in which the charging party alleges that the MPD discriminated against him on the basis of his race; and (d) *John H. Erkins, Jr. v. City of Milwaukee Police Department,* EEOC charge number 260–99–0019, in which the charging party alleges that the MPD discriminated against him on the basis of his race.

## A. *Hawkins* and *Brotherhood of Firefighter Charges*

On October 15, 1996, Earl T. Hawkins, who is black, filed a discrimination charge alleging that the FPC and the City violated Title VII by not promoting him from police officer to sergeant because of his race. As part of its investigation, the MDO on March 5, 1998 issued subpoena number MK–98–003, directing the City to produce certain information by April 3, 1998, including "a copy of the written exam for Sergeant that was validated per the League of Martin consent order in 1989" and "copies of all written exams, subsequent to the one validated in 1989, used in the testing process for Sergeant" (together the "promotion documents"). (Application ¶ 8; McBride Aff.Ex. E at 2.) The City received the subpoena on March 6, 1998.

On March 30, 1998, the City filed a "Petition to Modify Subpoena," asking the EEOC to enter into a protective order modeled on the confidentiality agreement ordered by a district court in *EEOC v. C & P Telephone Co.,* 813 F.Supp. 874 (D.D.C. 1993). The petition expressed the City's concern that the promotion documents are used for testing candidates for promotion within the MPD, and that without a protective order Mr. Hawkins might be able to obtain the materials pursuant to a Freedom of Information Act, 5 U.S.C. § 552 (FOIA), request, which would cause the tests to lose their value as selection instruments. According to the City, "in the event the test involved is compromised or rendered unusable, [it] would result in considerable expense." (McBride Aff.Ex. F ¶ 3.)

At the same time, the City Attorney's Office and the MDO were engaged in similar discussions concerning EEOC subpoena numbers MK–98–011 and MK–98–012 issued on February 10, 1998, in the *Brotherhood of Firefighters* matter. In that

charge, the Brotherhood alleged that the MFD had discriminated on a class-wide basis against African–American firefighters and applicants with respect to recruitment, hiring, promotion, discipline and other terms and conditions of employment. In response to the EEOC's subpoenas, a deputy city attorney telephoned an EEOC supervisory trial attorney and said that the City would produce information responsive to all of the items in the subpoenas except for documents relating to selection tests, job analysis data, and related documents (the "testing documents") given by the City to candidates for employment as firefighters, which were responsive to several items in the subpoenas.[1] The City's attorney asked the EEOC to enter into a protective order with respect to the testing documents so that the Brotherhood would not obtain the materials pursuant to a FOIA request and thus cause the tests to lose their value as selection instruments. As in the *Hawkins* case, he proposed that the parties use the confidentiality agreement ordered in *C & P Telephone.*

On March 12, 1998, the City produced information responsive to the two *Brotherhood of Firefighters* subpoenas except for the testing documents. Then, on March 25, 1998, the City filed a petition to modify subpoena numbers MK–98–011 and MK–98–012. The City essentially repeated the argument from its *Hawkins* petition for application of *C & P Telephone,* and, as in the *Hawkins* case, asked the EEOC to enter into a protective order modeled on the *C & P Telephone* confidentiality agreement. The City provided its version of a *C & P Telephone*-type confidentiality agreement, prohibiting the EEOC's dissemination of materials to the charging party, for the EEOC to review. (*See* McBride Aff. Ex. H at Ex. C.)

The EEOC responded with its own proposed confidentiality agreement, which would clarify its interpretation of FOIA and Title VII disclosure statutes. (*See* McBride Aff.Ex. I.) On May 4, 1998, after a series of telephone conversations between the EEOC and City, the City sent the EEOC a letter rejecting the EEOC's proposal and indicating its view that the confidentiality provisions of Title VII and the protections of FOIA "may protect the City's documents from the general public, however, the City is concerned about the confidentiality of the materials as it relates to both the general public and the charging party." (Application ¶ 12.) The City argued that the Brotherhood would be entitled to the information under section 83 of the EEOC compliance manual. It said it wanted a confidentiality agreement that went beyond the guarantees of Title VII and FOIA because it believed that there was a loophole in the statutes from the time the EEOC issues a determination until a federal lawsuit is filed under Title VII:

> Title VII forbids disclosure of an employment discrimination charge and other information to the public, but the definition of "public" does not include parties to the agency proceedings. The City's concern is that without a confidentiality agreement beyond the scope of the EEOC's authority under Title VII or as a federal agency under FOIA, the City will be left exposed. The EEOC's disclosure rule permits the release of information insofar as [sic] the charging parties or their attorneys who have filed a charge, respondents and their attorneys, so long as the request for information is made in connection with the contemplated litigation.... [T]he Brotherhood would have access to the testing materials as long as they claim to be contemplating litigation. This would leave the City in a position where it is unable to protect itself. The City would no longer be protected by the EEOC guidelines, and at the same time would not yet be involved in a Title

---

1. The testing documents are admitted to be responsive to items A1, B3(f) & (j), B4(f), B6(c), B7(a), C2(e) & (g), C3(d), C5(b) & (c), and C6(b) & (e) of subpoena numbers MK–98–001 and MK–98–0012. (App. ¶ 10; Resp. ¶ 10.)

VII federal court proceeding and therefore, unable to seek a protective order for the testing materials.

(*Id.* (citations omitted); McBride Aff.Ex. J at 2 (citations omitted).)

On October 16, 1998, the EEOC's Executive Secretariat denied the City's petitions to modify the above-referenced subpoenas in the *Hawkins* and *Brotherhood of Firefighters* cases. Since then, the City nevertheless has failed to comply with the subpoenas. In fact, the EEOC subsequently served two more subpoenas requesting the testing documents, MK–98–125 and MK–98–126 (which were served on the City on January 4, 1999), and on January 11, 1999 the City faxed the EEOC a petition to modify them, asserting the very same grounds and request for protective order it asserted in the petitions to modify that it filed on March 25 and 30, 1998—a need for a confidentiality agreement similar to that in *C & P Telephone* —and which the EEOC's Executive Secretariat denied. According to the EEOC's application, these petitions are still pending before the Executive Secretariat.

## B. *Miller* Charge

On April 3, 1998, Christopher A. Miller, who is black, filed a discrimination charge against the MPD, alleging that the MPD violated Title VII by discriminating against him because of his race when it suspended and terminated him from his job as a police officer. On December 17, 1998, the EEOC mailed subpoena number MK–98–083 to the City, with a due date of December 24, 1998. Among other things, the subpoena asked for a "complete unredacted copy of the Internal Affairs Department's (IAD) file on the investigation of the allegation." (McBride Aff.Ex. T.) The City received the subpoena on December 18. (*Id.*) The City never responded, nor did it file a petition to revoke or modify the subpoena.

## C. Erkins Charge

On October 7, 1998, John H. Erkins Jr., who is black, filed a discrimination charge against the MPD alleging that the MPD violated Title VII by discriminating against him because of his race when it transferred him, over his objections, out of the MPD's Sensitive Crimes Division and into MPD District 4.

On December 2, 1998, the EEOC sent a letter to the City requesting a position statement. The City responded on December 9, 1998 with a short letter offering little information. As a result, the EEOC issued subpoena number MK–99–001 on January 5, 1999, seeking additional information, including "all documentation which was drafted, in the course of the internal investigation against the Charging Party." (McBride Aff.Ex. X ¶ 2.) The chief of police received the subpoena on January 7, 1999.

On January 11, 1999, the City faxed to the EEOC a petition to modify subpoena number MK–99–001. In it the City stated that it sought to modify the subpoena "relative to a request for Internal Affairs Division records" and wanted a "confidentiality agreement which allows the City three business days to seek a protective order opposing any proposed production of materials by the EEOC." (McBride Aff.Ex. Y.) It did not propose any particular protective order. The decision of the EEOC's Executive Secretariat on the City's petition to modify subpoena number MK–99–001 is still pending.

To date, the City has refused to produce the testing documents, the promotion documents, or any of the IAD documents and information requested in subpoena numbers MK–98–003, MK–98–011, MK–98–012, MK–98–083, MK–98–125, MK–98–126 or MK–99–001.

The EEOC filed the present action under § 710 of Title VII as amended, 42 U.S.C.2000e–9, seeking a court order enforcing subpoena numbers MK–98–003, MK–98–011, MK–98–012, MK–98–083,

MK–98–125, MK–98–126 and MK–99–001 and requiring the City and its departments to produce the withheld documents and information.

Along with its Application for Enforcement, the Commission filed a brief and affidavit in support of its application. The City responded with solely its Response to Application for Enforcement of Administrative Subpoena, which for the most part admits the factual allegations in the application. The City failed to respond to the EEOC's brief or affidavit, despite both the summons and the automatic twenty-one day briefing schedule of Local Rule 6.01 (E.D.Wis.). I therefore will decide the motion on the current record before me. The City's basic position is clear, however, from its petitions to modify the subpoenas and other communications with the EEOC in response to the subpoenas. *See EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 309 (7th Cir.1981) (Seventh Circuit rejected respondent's argument that it had insufficient opportunity to object to EEOC subpoena in district court, stating: "In any event, Bay raised its objections before the EEOC and they were also in the record below and considered by the district court.").

## II. ANALYSIS

### A. General Applicable Law

In connection with any investigation of an employment discrimination charge filed with the EEOC, the Commission "shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices." 42 U.S.C. § 2000e–8(a). To effectuate its investigatory power, the EEOC has the authority to issue subpoenas. 29 C.F.R. § 1601.16(a).

Federal regulations govern the procedure for objecting to an EEOC subpoena:

Any person served with a subpoena who intends not to comply shall petition the issuing Director or petition the General Counsel ... to seek its revocation or modification. Petitions must be mailed to the Director or General Counsel, as appropriate, within five days (excluding Saturdays, Sundays and Federal legal holidays) after service of the subpoena.

29 C.F.R. § 1601.16(b)(1). If a person served with a subpoena fails to comply therewith and does not petition for revocation or modification, or fails to comply after his or her petition is denied, the Commission may apply to the district court in the jurisdiction where the investigation is conducted for a court order requiring the production of the subpoenaed testimony or information. 42 U.S.C. § 2000e–9; 29 U.S.C. § 161(2); 29 C.F.R. § 1601.16(c) & (d).[2]

■ When a court is asked to enforce an EEOC subpoena, its review of the matter is circumscribed. Proceedings are summary in nature and the court's role is "sharply limited." *EEOC v. Tempel Steel Co.*, 814 F.2d 482, 485 (7th Cir.1987); *EEOC v. City of Milwaukee*, 919 F.Supp. 1247, 1256 (E.D.Wis.1996). The court's "responsibility is to 'satisfy itself that the charge is valid and that the material requested is "relevant" to the charge ... and more generally to assess any contentions by the employer that the demand for information is too indefinite or has been made for an illegitimate purpose.' " *University of Pa. v. EEOC*, 493 U.S. 182, 191, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 72 n. 26, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984)). As a general proposition, the court should enforce an administrative subpoena "if it seeks reasonably relevant information, is not too indefinite, and relates to an investigation within the agen-

---

**2.** I therefore have jurisdiction over this matter pursuant to these provisions because the City is located within this district.

cy's authority." *EEOC v. Quad/Graphics, Inc.,* 63 F.3d 642, 645 (7th Cir.1995). A subpoena will not be enforced, however, if it is excessively burdensome, that is, if compliance would threaten the normal operation of a respondent's business. *Id.; Bay Shipbuilding,* 668 F.2d at 313.

In a summary proceeding for enforcement of an EEOC subpoena, the burden is on the party contesting enforcement to demonstrate that grounds for challenge exist. *EEOC v. Suburban Transit Sys., Inc.,* 538 F.Supp. 530 (N.D.Ill.1982).

## B. Failure to Petition for Modification in a Timely Manner, if at All

Subpoena numbers MK–98–003, MK–98–011, MK–98–012, and, especially, MK–98–083 will be enforced. In an administrative subpoena enforcement action, a person who has failed to exhaust his or her administrative remedies in challenging an EEOC subpoena generally is precluded from raising defenses to the judicial enforcement of the subpoena. *City of Milwaukee,* 919 F.Supp. at 1255; *EEOC v. Hennepin,* 623 F.Supp. 29, 31–32 (D.Minn. 1985). A few exceptions to this exhaustion of remedies doctrine exist, but the City, similar to what it did in the 1996 *City of Milwaukee* case, has not demonstrated that any of the exceptions applies.

The City admits that its petitions for modification of the first three of these subpoenas all were submitted after the five-day deadline of 29 C.F.R. § 1601.16(b).[3] And while perhaps the City could argue that its tardiness regarding objections to those three subpoenas caused the Commission no harm, the delinquencies and, more importantly, its lack of any action whatsoever concerning subpoena number MK–98–083 are in flagrant disregard of the EEOC's investigatory power, given to it by Congress. This is so espe-

cially in light of the fact that the City has been told this before. This is not the first time the City has failed to follow the federal regulation governing petitions to modify or quash EEOC subpoenas. Just a few years ago, in *City of Milwaukee,* cited above, Magistrate Judge William E. Callahan, Jr. and Judge Robert W. Warren (on appeal) found that the City, during an EEOC investigation of an alleged pattern and practice of racial discrimination within the police department, failed to pursue any relief via the administrative process. Magistrate Judge Callahan reprimanded the City, stating that he could not "very easily excuse the City's failure to follow administrative procedures in challenging the subpoena. After all, the City is not akin to a pro se litigant. To the contrary, it is represented by able counsel." *Id.* at 1254 n. 2 (emphasis deleted).

In regard to subpoena numbers MK–98–003, MK–98–011, MK–98–012, and MK–98–083, then, the City is precluded from raising any defenses to enforcement and those subpoenas will be enforced for that reason. In addition, the subpoenas will be enforced for the reasons set forth in the next section.

## C. Confidentiality Concerns

As indicated by its petitions to modify the subpoenas and correspondence with the EEOC, the City does not contend that the EEOC's request for the objected-to items exceeds the scope of its statutory authority, that the items are irrelevant to the EEOC's investigations, that the requests are too indefinite, or that the EEOC is demanding them for an illegitimate purpose. Instead, before turning the documents over it wants to ensure that each charging party does not see the responsive documents. *(See, e.g.,* McBride Aff.Ex. K ("It is not our position that you

---

3. As stated above, the City received subpoena numbers MK–98–011 and MK–98–012 in the *Brotherhood of Firefighters* matter on February 12, 1998 and filed its petition to modify those subpoenas 41 days later on March 25,

1998. The City received subpoena number MK–98–003 in the *Hawkins* matter on March 6, 1998 and responded 24 days later on March 30, 1998.

should not have access to the materials, merely, that we seek a protective order, which would ensure that all of ours [sic] concerns regarding confidentiality are met.").) The basic requirements for enforcement set forth in *University of Pennsylvania* and *Quad/Graphics* are therefore met, and the only issue left is whether divulging the withheld information is excessively burdensome, threatening the normal operation of the City's business by allowing public access to the City's confidential testing materials and therefore destroying their usefulness.

Title VII contains protections for confidential material disclosed to the EEOC during an investigation. Section 2000e–5(b) states that charges themselves "shall not be made public by the Commission" and provides for fines or imprisonment for anyone violating this rule of confidentiality. Section 2000e–8(e) specifically applies to information obtained during an investigation:

> It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter [i.e. litigation] involving such information. Any officer or employee of the Commission who shall make public in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor. . . .

The "public" set forth in these sections, however, does not include charging parties; a charging party has access to the information uncovered by the EEOC during the investigation of his or her own case. *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981); *see also* 29 C.F.R. § 1601.22. A charging party obtains the information in his or her EEOC file by filing a request under FOIA. His or her access begins when litigation is contemplated, not upon the actual filing of a case

within which the City could move for a protective order. As a result, the City fears that at the close of an investigation the charging parties might obtain the testing documents, promotion documents, or IAD investigative files by requesting them pursuant to FOIA and the City would have no protection.

The City's perceived need for confidentiality, though, does not in any way justify a refusal to comply with the EEOC's subpoenas. In *Associated Dry Goods*, the Supreme Court held that an employer has no categorical right to refuse to comply with an EEOC subpoena unless the EEOC first assures the employer that information supplied will be held in absolute secrecy. *Associated Dry Goods*, 449 U.S. at 604, 101 S.Ct. 817; *see University of Pa.*, 493 U.S. at 192, 110 S.Ct. 577; *see also Bay Shipbuilding*, 668 F.2d at 312 ("confidentiality is no excuse for noncompliance").

This case falls right in line with the Supreme Court's *University of Pennsylvania* case, in which the respondent refused to provide the EEOC, which was investigating a charge of discrimination in the respondent's tenure decisions, with peer review information contained in certain tenure files. The university claimed it deserved a special privilege requiring a judicial finding of particularized necessity of EEOC access before the peer review materials were disclosed. The Supreme Court found that §§ 2000e–8(a) and 2000e–9 do not carve out any special privilege relating to materials a respondent itself believes warrant confidentiality. *See University of Pa.*, 493 U.S. at 191, 110 S.Ct. 577. The Court recognized that in these sections Congress already has addressed situations in which the employer may have an interest in the confidentiality of its records and it has chosen the amount of protection available:

> To be sure, the protection of confidentiality that § 2000e–8(e) provides is less than complete. But this, if anything, weakens petitioner's argument. Congress apparently considered the issue of

confidentiality, and it provided a modicum of protection. Petitioner urges us to go further than Congress thought necessary to safeguard that value, that is, to strike the balance differently from the one Congress adopted. Petitioner, however, does not offer any persuasive justification for that suggestion.

. . . .

. . . [W]e stand behind the breakwater Congress has established: unless specifically provided otherwise in the statute, the EEOC may obtain "relevant" evidence. Congress has made the choice. If it dislikes the result, it of course may revise the statute.

*Id.* at 192–94, 110 S.Ct. 577 (footnote omitted). The Supreme Court indicated it was reluctant to place the potent weapon of a claimed privilege in the hands of employers who have no interest in complying voluntarily and who wish instead to delay EEOC investigations as long as possible. *Id.* at 194, 110 S.Ct. 577.

The City's argument of confidentiality in fact was rejected as a defense to subpoena enforcement in the 1996 *City of Milwaukee* case. The subpoena at issue in that case required the City to produce, among other things, certain relevant IAD files, documentation covering the selection procedures for hiring, promotion, and transfer, and names and identifying information of confidential informants who spoke with the MPD during applicant background checks. *See City of Milwaukee,* 919 F.Supp. at 1251–1253. The City argued that giving the EEOC access to ongoing IAD investigatory files could severely compromise ongoing investigations and that turning over the confidential informant information would have a chilling effect which would effectively prevent the MPD from gaining important information relating to applicants. The City argued that release of the contested items to the EEOC would severely threaten the normal operations of the MPD's business. *See id.* at 1256. While noting that he was "not insensitive to the concerns of the City over what impact disclosure to the EEOC" would have, Magistrate Judge Callahan nevertheless found no sufficient grounds for denying enforcement of the subpoena based upon confidentiality concerns. *Id.* at 1258.

In addition to its providing no legal basis for denial of the EEOC's application, the City's fear is also unfounded, or at least greatly exaggerated. Federal statutes, regulations, and EEOC procedures effectively guard against dissemination of a screening test or IAD materials. A party attempting to obtain the objected-to information has to make a request under FOIA. Under FOIA itself the EEOC will not disclose any information qualifying under any of nine exceptions. One of those exceptions, § 552(b)(3), incorporates the prohibitions of §§ 2000e–5(b) and 2000e–8(e). Therefore, any member of the public making a FOIA request for EEOC investigation materials will be denied access.

The number of charging parties able to request EEOC files under FOIA is narrow. The EEOC does not release documents under FOIA unless it has closed an investigation. (McBride Aff. ¶ 26.) No documents are released to charging parties who have settled a discrimination charge, because the EEOC considers those persons to be members of the public to whom disclosure is forbidden. *See* EEOC Compliance Manual (McBride Aff.Ex. 2) § 83.1 (referencing requests in "open Title VII/ADA charge files"). (*See also* McBride Aff. ¶ 26(c).) In addition, a charging party whose charge has not prompted an action brought by the EEOC can obtain investigative information only before his or her ninety day time period for filing a lawsuit expires.[4] EEOC Compliance Manual § 83.4. Once the period expires without a lawsuit being filed, the charging party is

---

4. When the EEOC decides not to file suit on behalf of a charging party, it issues a "Notice of Right to Sue," which gives the charging party only ninety days within which to file his or her own lawsuit. *See* 42 U.S.C. § 2000e–5(f)(1).

treated as any other member of the public and a request for information will be denied under section 83.4 of the EEOC Compliance Manual. (*See* McBride Aff. ¶ 26(d).) Even if the charging party makes a timely FOIA request, another safeguard appears. Section 83.3 of the EEOC Compliance Manual mandates that all requestors of EEOC investigative materials sign a nondisclosure agreement before obtaining any information, agreeing not to disclose the information except in the normal course of a lawsuit.

The City perhaps believes that § 2000e–8(e)'s inapplicability to charging parties means that all items in the EEOC file must be turned over to a charging party upon a FOIA request. That is not the case. FOIA contains eight additional exceptions to disclosure, exempting certain records from public access and permitting them to be withheld. 5 U.S.C. § 552(b). Section 552(b)(4) exempts confidential commercial information, which can include documentation provided by governmental entities. 29 C.F.R. § 1610.19. Federal regulations require that the Commission provide a submitter of confidential commercial information with notice of the FOIA request and an opportunity to object. 29 C.F.R. § 1610.19(b) & (d). If the objection is not sustained, the submitter is allowed a time period within which to seek a court injunction. 29 C.F.R. § 1610.19(e)(1). The EEOC admits that the testing documents and promotion documents "are probably confidential commercial information .... protected by FOIA's '(b)(4)' exemption." (Mem. in Support at 21.)

Sections 552(b)(6) and (b)(7) exempt personnel files the disclosure of which would constitute an unwarranted invasion of privacy and records compiled for law enforcement purposes to the extent production would interfere with enforcement proceedings, deprive a person of an impartial adjudication, or disclose certain investigation techniques, among other things. The EEOC admits that the IAD documents the

City refuses to produce "will be exempt from production under FOIA" under these subsections. (*Id.* at 22.) *See also City of Milwaukee*, 919 F.Supp. at 1258–59 ("5 U.S.C. §§ 552(b)(6) and (b)(7) ... regulate severely the disclosure of information and documentation which the EEOC would receive via this subpoena").

These statutory provisions are not negated by the fact that under *Associated Dry Goods* charging parties are not exempted by § 2000e–8(e); rather they are protections in addition to Title VII's confidentiality provisions. Nor can the § 552(b) exemptions be trumped by EEOC Compliance Manual § 83.5, which happens not to include confidential commercial information and law enforcement materials among the items EEOC employees are told to remove from a file before release. The agency procedural rule cannot avoid a federal statute, and the EEOC says it does in fact follow the statute. When the EEOC receives a FOIA request, the case file is reviewed once by an attorney or paralegal and then again by a review officer. (McBride Aff. ¶ 26(a).) The EEOC conducts these reviews under the standards of FOIA, including the exemptions in § 552(b), and will not release any documents falling within the nine exemptions listed in that section. (McBride Aff. ¶ 26(f); *see also* McBride Aff.Ex. L at 1 (letter from EEOC supervisory trial attorney to City in which attorney states "that the EEOC reviews Section 83 requests under the standards established in FOIA, including ... § 552(b)(4)"); McBride Aff. Ex. O at 11 (EEOC Executive Secretariat decision in which it says that if a charging party "makes a timely FOIA request, the EEOC will not produce any documents falling within the nine exemptions listed in 5 U.S.C. § 552").) The EEOC's attorney told the City the EEOC would sign a confidentiality agreement assuring City of the application of the FOIA exemptions:

> [M]y new proposal is that the EEOC will add a provision to the confidentiality agreement ... which will eliminate the

## 895

City's Section 83 concern by stating that the EEOC will apply the protections of FOIA, specifically the exemption in 5 U.S.C. § 552(b)(4), when it reviews any request for documents made by the Brotherhood or any other person pursuant to Section 83. This should allay any concern by the City that somehow Section 83 is a "loophole" in the protections provided by Title VII and FOIA.

(McBride Aff.Ex. L at 2.)

The only support for the City's resistance to the EEOC subpoenas is *C & P Telephone*, a district court case that is exactly on point, but not persuasive to me. In *C & P Telephone* the EEOC sought from the respondents copies of tests given to applicants for a certain position. The charging party, like the Brotherhood in this case, was a union, and the respondents balked at releasing the tests to the EEOC based on a fear that the union could obtain the tests under FOIA and disclose them to its members. While recognizing that the need for confidentiality was no basis to refuse to comply with an EEOC subpoena, the District of Columbia district judge held that he could, however, impose conditions on the disclosure of the confidential tests. *C&P Tel.*, 813 F.Supp. 874, 876 (D.D.C. 1993). He found that the EEOC provided inadequate assurances that (1) the nondisclosure agreement executed pursuant to section 83 of the EEOC Compliance Manual would prevent the union from disseminating the tests (and it was unclear how the EEOC could enforce the agreement anyway), (2) the EEOC would exercise its prelitigation discretion not to release the subpoenaed information to the union, and (3) at the time of any FOIA request by the union it would review the file to determine if the information sought would fall under a FOIA exemption. Because the EEOC's assurances were inadequate and the respondents had a strong interest in protecting the confidentiality of the tests, the court held that the Commission had to enter into a confidentiality agreement preventing the dissemination of the tests to

the charging party and putting into place protective procedures to prevent such dissemination.

Another branch of this very court, in the *City of Milwaukee* case involving the same two parties as currently before me, questioned the legality of the *C & P Telephone* court's order forcing the EEOC, over its objection, to enter into a protective order to maintain the confidentiality of the subpoenaed information and documents more strictly than required by Congress in FOIA and Title VII. *City of Milwaukee*, 919 F.Supp. at 1260. I too think that the court's authority to so condition the release of relevant subpoenaed information to the EEOC is debatable.

Further, I do not agree with *C & P Telephone's* conclusion that the federal statutes and regulations and EEOC procedures are inadequate safeguards. But regardless, the EEOC has provided more assurances in this case than it did in *C & P Telephone* about its compliance with § 552(b) and the likelihood of an exemption for the objected-to materials, which would relieve many of the *C & P Telephone* district judge's concerns. The EEOC actually has offered to review questioned documents prior to the City's release of them to the Commission and tell the City whether the documents will fall under § 552(b).

The burden is on the City, as the noncomplying recipient of several EEOC subpoenas, to convince me that the subpoenas should not be enforced. It has not. It fails to convince me that I can, or should, impose any confidentiality agreement upon the EEOC. It fails to convince me that FOIA, Title VII and section 83 of the EEOC Compliance Manual will not provide adequate protection against its perceived fear. The City raised its "loophole" argument and the precedent of *C & P Telephone* in the 1996 *City of Milwaukee* case. (McBride Aff.Ex.B at 9–11.) They failed to persuade Magistrate Judge Callahan and Judge Warren then, and they fail to persuade me now that a confidentiality

agreement must be imposed on the EEOC as a condition of enforcement of the subpoenas.

### III. CONCLUSION

**IT THEREFORE IS ORDERED** that the EEOC's application for enforcement of subpoena numbers MK–98–003, MK–98–011, MK–98–012, MK–98–083, MK–98–125, MK–98–126 and MK–99–001 is **GRANTED. IT HEREBY IS ORDERED** that the City promptly provide the EEOC with the promotion documents, testing documents, IAD documents and other information responsive to the above subpoenas that the City to date has been withholding.