**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Petitioner,**

v.

**AON CONSULTING, INC. and Delphi Automotive Systems, Respondents.**

**Nos. IP 01–37–MISC, IP 01–38–MISC.**

United States District Court, S.D. Indiana, Indianapolis Division,

April 26, 2001.

Jamie Darin Prenkert, for Plaintiff.

Michael Warner, Seyfarth, Shaw, Chicago, IL, for Defendant.

Jane Ann Himsel, Wooden & McLaughlin, LLP, Indianapolis, IN, for Defendant.

## ENTRY ON EEOC'S APPLICATIONS TO ENFORCE SUBPOENAS

HAMILTON, District Judge.

In these two related subpoena enforcement actions, petitioner Equal Employment Opportunity Commission (EEOC) seeks an order compelling full compliance with subpoenas duces tecum it served on respondents Delphi Automotive Systems and Aon Consulting, Inc. Delphi and Aon Consulting are the respondents in several administrative charges filed by non-white job applicants who sought hourly positions at Delphi but were not hired. Aon Consulting has developed and administers tests that Delphi uses to screen job applicants. The screening procedure includes written tests, job simulation exercises and a structured interview form. In the administrative proceedings, the charging parties allege that the testing procedures are discriminatory.

The central issue is whether the EEOC should be required to keep confidential from the charging parties any employment tests and validation studies produced by respondents. As explained below, confidentiality of such documents is important not only to the respondents but also to compliance with laws against discrimination in employment. See generally *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 313–15, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979). Accordingly, production of such documents to the EEOC must be on conditions that require the EEOC to keep the documents confidential, so that disclosure to the charging parties is prohibited during the EEOC's investigation.

### Background

The EEOC issued subpoenas to both Delphi and Aon Consulting on December 13, 2000. The Aon Consulting subpoena calls for production of all tests and validation studies, as well as tests and related documents relating to specific applicants. Respondents contend that the tests and related documents are confidential and valuable, and that unrestricted disclosure of those documents would destroy the integrity and value of the tests. Respondents do not object to producing the tests and validation studies to the EEOC, but they seek legally enforceable assurances that the EEOC will keep the documents confidential. Pursuant to EEOC regulations, Delphi and Aon Consulting filed administrative petitions to revoke the subpoenas. On January 17, 2001, the EEOC denied those petitions. Delphi and Aon Consulting then supplemented their responses but still did not comply fully with the subpoenas.

The EEOC then filed these two actions to enforce its subpoenas pursuant to 42 U.S.C. § 2000e–9. The law requires the EEOC to maintain confidentiality of investigations in general, but there is a significant exception. The law allows the EEOC to share the results of its investigation with complaining parties, who are under no legal obligation to maintain confidentiality. The EEOC insists that if it obtains the tests and validation studies from Aon Consulting or Delphi, it has no intention of sharing those documents with the complaining parties. The EEOC also states that its regional office's current policy is not to share with complaining parties the documents obtained in investigations. Nevertheless, the EEOC does not wish to tie its hands with any legal obligations to maintain such confidentiality, so it has not agreed with Aon Consulting and Delphi to limit its ability to share the documents with the complaining parties.

The court held a hearing on April 10, 2001. At the hearing, the court ruled in

favor of the EEOC on Request Nos. 1, 3, 5, and 6 of the Delphi subpoena and Request No. 2 of the Aon Consulting subpoena, which respondents had claimed were too burdensome. The court took under advisement the issue of the tests, validation studies, and related documents. (These issues correspond to Request Nos. 3, 4, 9, and 10 of the Aon Consulting subpoena.) The court now enforces the Aon Consulting subpoena to order production of the tests, validation studies, and related documents, but on the conditions that: (1) the EEOC not disclose the tests, validation studies or related documents to complaining parties; and (2) the EEOC return the tests, validation studies, related documents, and all copies 180 days after any right-to-sue letter or other notice concluding the investigation is issued, unless litigation ensues. These conditions are required because of the unusual need to maintain confidentiality of the tests and validation studies.

### Discussion

Title VII grants the EEOC broad investigatory authority. See 42 U.S.C. § 2000e–8(a) (the EEOC "shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices"). This authority includes subpoena power. See 29 C.F.R. § 1601.16(a). The EEOC may apply to the district court in the jurisdiction where it is conducting an investigation for an order compelling production of subpoenaed information. 42 U.S.C. § 2000e–9; 29 U.S.C. § 161(2); 29 C.F.R. § 1601.16(c) & (d); *EEOC v. City of Milwaukee*, 54 F.Supp.2d 885, 890 (E.D.Wis. 1999).

◼ Subpoena enforcement proceedings are summary in nature, and the court's role is "sharply limited." *EEOC v. Tempel* *Steel Co.*, 814 F.2d 482, 485 (7th Cir.1987). As a general proposition, the court should enforce an administrative subpoena "if it seeks reasonably relevant information, is not too indefinite, and relates to an investigation within the agency's authority." *EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642, 645 (7th Cir.1995); accord, *EEOC v. Shell Oil Co.*, 466 U.S. 54, 72 n. 26, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984) (court should satisfy itself that charge is valid and that material requested is relevant, and should assess respondent's contentions that request is too indefinite or is for improper purpose, but it would be error to assess likelihood that EEOC will be able to prove underlying claims).

◼ A subpoena will not be enforced, however, if it is excessively burdensome—that is, if compliance would threaten the normal operation of a respondent's business. *EEOC v. Quad/Graphics, Inc.*, 63 F.3d at 645; *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir.1981). The burden is on the party contesting enforcement of the subpoena to demonstrate that grounds for challenge exist. *EEOC v. Quad Graphics, Inc.*, 63 F.3d at 649; *EEOC v. Suburban Transit Sys., Inc.*, 538 F.Supp. 530, 533 (N.D.Ill.1982). Whether the subpoena should be enforced and under what conditions are matters within the trial court's sound discretion. *EEOC v. Quad Graphics, Inc.*, 63 F.3d at 645, citing *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1267 (7th Cir.1982).

◼ The disputed portions of the EEOC subpoena to Aon Consulting seek the following categories of documents:

Request No. 3—all tests, including small group assessment forms, questionnaires, and interview guides/questions used to test and screen candidates/applicants;

Request No. 4—all validation studies for all tests, group assessment proce-

dures/processes and interviews used during the screening process; all materials utilized or submitted to another organization to evaluate the validation studies;

Request No. 9—test forms, interview forms, and assessment forms for 12 specified employees; and

Request No. 10—tests, assessments, and interviews of individuals who were given an opportunity to retake a test, group assessment and/or interview.

Delphi and Aon Consulting do not contend that these requests seek irrelevant information or that they are unduly burdensome, at least apart from confidentiality concerns. Instead, they argue that Aon Consulting should be permitted to produce the subpoenaed information pursuant to a protective order because the testing information sought is confidential and proprietary. The EEOC has declined to agree voluntarily to a protective order.

The EEOC contends that a protective order is unnecessary in this case because the law provides adequate protection to respondents. During the EEOC's investigation of a charge of discrimination, Title VII prohibits the EEOC from making public charges of discrimination or information obtained by the EEOC in its investigation. 42 U.S.C. §§ 2000e–5(b) & 2000e–8(e). EEOC personnel may face criminal penalties for such a disclosure. See *id.;* see also *EEOC v. Bay Shipbuilding Corp.,* 668 F.2d at 312 (relying on § 2000e–8(e) to reject overbreadth objection based on confidentiality concerns about employee information).[1]

The Supreme Court has held, however, that Section 2000e–8(e) does not prohibit the EEOC from disclosing information obtained in an investigation to a charging party. *EEOC v. Associated Dry Goods Corp.,* 449 U.S. 590, 598, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981) (reversing district court's protective order barring disclosure to charging party of information in his own file).

The EEOC requires charging parties to sign nondisclosure agreements before they gain access to information that the EEOC obtained in an investigation. See *Associated Dry Goods,* 449 U.S. at 596–98 & n. 12, 101 S.Ct. 817, citing EEOC Compliance Manual § 83.3. That nondisclosure agreement allows the charging party to disclose information only through a lawsuit. See *id.* There is no indication, however, that such agreements have effective enforcement mechanisms where a charging party violates the agreement.

After the EEOC concludes an investigation, its investigative file may be the subject of a request for information under the federal Freedom of Information Act (FOIA). FOIA exempts from production "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). EEOC regulations require the agency to inform anyone who has submitted confidential commercial material or trade secrets that the information has been requested by a member of the public. The party may object promptly to the disclosure of that information and ultimately may seek an injunction to prohibit such disclosure. See 29 C.F.R.

---

**1.** Section 2000e–8(e) provides: "It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information. Any officer or employee of the Commission who shall make public in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than one year."

§ 1610.19(b), (d) & (e) (upon notice from EEOC of request for confidential information, submitter has five working days to state detailed objections; if the EEOC decides to disclose the information, the EEOC must notify the submitter at least three days before the disclosure date so that the submitter may seek an injunction).

Because of these statutory safeguards, the Supreme Court has rejected defenses based on confidentiality concerns in EEOC subpoena enforcement proceedings. In *Associated Dry Goods*, the Court held that an employer was required to comply with a subpoena despite the EEOC's refusal to agree that information produced would be kept confidential from charging parties. The Court held the employer was entitled to assurance only that each charging party would see information in no file other than his or her own. 449 U.S. at 604, 101 S.Ct. 817. Similarly, in *University of Pennsylvania v. EEOC*, 493 U.S. 182, 194, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990), the Court rejected a university's attempt to recognize a new privilege that would require the EEOC to show particularized need before the EEOC itself could obtain peer review information used in faculty tenure decisions.

At the same time, however, the Supreme Court has recognized the importance of maintaining confidentiality of tests used for employment decisions. In *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979), the Court held that the NLRB had abused its discretion by ordering an employer to disclose such tests directly to its employees' union. The need for preserving the secrecy of the tests was treated as a given by the Court and all parties. *Id.* at 315, 99 S.Ct. 1123. Disclosure of the contents of the test to those who would take the test in the future would compromise its integrity and the validity of the results. The Court expressly recognized the important role that objective tests play in employers' efforts to comply with the Civil Rights Act itself, among other laws. *Id.* at 313–14, 99 S.Ct. 1123 (also noting that federal government had been "zealous to guard against undue disclosure" of tests used in government hiring).

The problem in *Detroit Edison* was whether assurances of confidentiality were sufficient. The NLRB had ordered disclosure to the union on the condition that use be limited to grievances and arbitrations, that the union not copy the tests or use them for the purpose of disclosing their contents to past and future test-takers, and that all copies be returned to the employer. 440 U.S. at 311 n. 9, 99 S.Ct. 1123. The Supreme Court held these conditions were so inadequate as to reflect an abuse of the NLRB's discretion in choosing remedies. The Court explained: "The restrictions barring the Union from taking any action that might cause the tests to fall into the hands of employees who have taken or are likely to take them are only as effective as the sanctions available to enforce them." *Id.* at 315, 99 S.Ct. 1123. The Court found essentially no prospect for effective sanctions against the union in the event of deliberate leaks, let alone the "most realistic" risk of inadvertent leaks. *Id.* at 316, 99 S.Ct. 1123.

Faced with the Supreme Court's decisions in *Associated Dry Goods* and *Detroit Edison*, the two lower courts that have published opinions directly confronting EEOC subpoenas of employment tests and validation studies have reached opposite results.

In *EEOC v. C & P Telephone Co.*, 813 F.Supp. 874 (D.D.C.1993), the EEOC was investigating a charge alleging in part that an employer's aptitude test had a disparate impact on female and non-white appli-

cants. The EEOC subpoenaed data about individual applicants, applicants' test results, copies of the tests themselves, and research and validation studies related to the tests. The employer refused, claiming the test documents were confidential. *Id.* at 875. The district court found that the test documents were relevant to the EEOC's investigation but that the employer also had an "an extremely strong interest" in protecting the subpoenaed information because, if it were disclosed to union members, the test would effectively be destroyed. *Id.* at 876. The EEOC argued, as it does in this case, that its internal procedures and statutory protections were sufficient.

The *C & P Telephone* court ordered production, but on the condition that the EEOC enter into a confidentiality agreement barring dissemination to the union in question, barring copying, and requiring the EEOC to return the documents to the employer at the conclusion of the EEOC's investigation. *Id.* at 877. The court relied on *Detroit Edison* to find that the EEOC's internal procedures and assurances did not provide sufficient protection. *Id.* at 876. The EEOC had argued that a non-disclosure agreement under Section 83 of its Compliance Manual would protect the employer's interest. As in *Detroit Edison,* however, the court found no effective means for enforcing such an agreement, so that mechanism did not provide adequate protection for the employer. *Id.* at 877.

In *EEOC v. City of Milwaukee,* 54 F.Supp.2d 885 (E.D.Wis.1999), on the other hand, a district court enforced several subpoenas requiring production of tests used to make hiring and promotion decisions in several city agencies. The employer relied on *C & P Telephone* to argue that the court should require the EEOC to agree to a confidentiality agreement to prevent disclosure to the unions and pro-

spective test-takers. The district court rejected the argument and disagreed with *C & P Telephone.* The court in *Milwaukee* relied on *University of Pennsylvania* and also found that the employer's fear of disclosure was "unfounded, or at least greatly exaggerated," in light of the EEOC's internal procedures and the protections built into the Freedom of Information Act. *Id.* at 892–94; see also *EEOC v. City of Milwaukee,* 919 F.Supp. 1247, 1258 (E.D.Wis. 1996) (enforcing similar subpoenas requiring disclosure of police internal affairs files, identities of confidential informants, as well as selection procedures for hiring, promotion and transfer).

The *Milwaukee* court's treatment of the risks of public disclosure through disclosure to a charging party is not persuasive. The *Milwaukee* court relied on the nondisclosure agreement that the EEOC would require under its Compliance Manual. 54 F.Supp.2d at 894. But the court did not take the further step of considering, as the Supreme Court did in *Detroit Edison,* whether such an agreement has any effective enforcement mechanism. See 440 U.S. at 315, 99 S.Ct. 1123 (restrictions on union "are only as effective as the sanctions available to enforce them"). Similarly here, the EEOC has not offered any basis for believing that enforcement sanctions are available to provide reasonable assurance that a charging party will preserve the confidentiality of information the EEOC provides.

Moreover, it appears that the *Milwaukee* court based its decision on the belief that, during the investigation, a charging party could obtain information only by complying with FOIA, which permits the responding agency to withhold confidential commercial information in its files. 54 F.Supp.2d at 894, citing 5 U.S.C. § 552(b)(4); *id.* at 895 (distinguishing *C & P Telephone* because EEOC had provided

more assurances about its compliance with § 552(b) and the likelihood of an exemption for materials in question). In this case, however, the EEOC insists that it has a legal right to disclose to the charging parties during its investigation *any* documents it obtains in its investigation, apparently without the limits that might be imposed under § 552(b) of FOIA on a request by a member of the general public.

The Supreme Court's decisions in *University of Pennsylvania* and *Associated Dry Goods* do not bar a court from enforcing an EEOC subpoena on the condition that exceptionally sensitive information, like employment-related tests, be kept confidential from the charging party. In *University of Pennsylvania*, the employer was refusing to produce the information in question even to the EEOC itself. The Court declined to recognize the new proposed privilege for faculty peer review materials. 493 U.S. at 189, 110 S.Ct. 577. That decision does not extend to the case here, where the employer wants to provide the information to the EEOC, but only on the condition that the information be kept truly secret.

In *Associated Dry Goods*, the Court reversed a district court decision requiring the EEOC to provide assurances of complete secrecy, and the Court recognized that disclosure to charging parties could play an important role in resolving charges of discrimination. 449 U.S. at 600–01, 101 S.Ct. 817. The Court's opinion did not establish a blanket prohibition on confidentiality conditions for enforcement of EEOC subpoenas, though it certainly shows that conditions should be rare and limited to extraordinarily sensitive information. This court agrees with the recent observations of Judge Lynch in *EEOC v. Morgan Stanley & Co.*:

As the Supreme Court has interpreted Title VII, Congress has specifically foreseen and approved of the EEOC's practice of sharing information with charging parties, because that practice is consistent with and promotes the statutory purpose. The holding of *Associated Dry Goods* does not necessarily foreclose the existence of discretion in a district court to enter a protective order in extraordinary circumstances. After all, the Supreme Court in that case was primarily concerned with rejecting an argument that section 709(e) *by its own force* prohibited disclosure to the charging party in all cases; it did not expressly consider whether a district court might have the authority to enter a protective order prohibiting such disclosure in circumstances where the particular nature of the information or of the charging party made such an order appropriate. But at a minimum, the logic of *Associated Dry Goods* makes plain that because disclosure to the charging party would ordinarily further the enforcement of the Act, disclosure should be the norm and such orders will be appropriate only in unusual circumstances.

132 F.Supp.2d 146, 156 (S.D.N.Y.2000) (original emphasis) (enforcing EEOC subpoenas where employer's interests in confidentiality were not extraordinary).

The EEOC argues that a ruling requiring a confidentiality agreement in this case would lack a limiting principle and might broadly interfere with the EEOC's investigative power. The court disagrees. The Supreme Court's decision in *Detroit Edison* recognizes that employment tests and validation studies present an extraordinarily compelling case for confidentiality. Disclosure can simply destroy the value of the tests. The limiting principle is the economic value (broadly speaking) that secrecy provides to the tests and validation studies. Trade secret law recognizes that, where information has substantial economic value precisely because it is not general-

ly known or readily ascertainable, legal protection is available to preserve that secrecy. See, *e.g.*, Ind.Code § 24–2–3–2 (defining trade secret in Indiana enactment of Uniform Trade Secrets Act). Disclosure of a trade secret to a person who has no obligation to keep it secret destroys the trade secret, just as disclosure of a privileged attorney-client communication to someone who has no obligation to keep it confidential destroys the privilege.

Respondents Aon Consulting and Delphi have shown that an unprotected disclosure of their tests and validation studies is likely to cause substantial economic harm by destroying the integrity and value of the tests. The EEOC has not shown that existing statutory and regulatory procedures and protections offer sufficient protection to require disclosure, for the EEOC insists that it has a legal right to disclose such information to the charging parties in this case, who would be under no legally meaningful obligation to keep the information confidential.

■ After the EEOC concludes its investigations, it plans to retain the subpoenaed information in its files, where it would be subject to requests under FOIA. The court concludes that the FOIA provisions offer sufficient protection for respondents during the period during which charging parties may seek information from their files. Respondents are required to receive notice of such requests for commercially sensitive information so that they have an opportunity to object to its disclosure. See 5 U.S.C. § 552(b)(4); 29 C.F.R. § 1610.19. If the charging parties bring no private lawsuits, however, there is no need to keep such commercially sensitive information in the EEOC's possession in perpetuity. The court will therefore order such documents returned to respondents by the later of 180 days after all relevant EEOC investigations are concluded or the final conclusion of all litigation arising from these investigations.[2]

Accordingly, respondent Aon Consulting is ordered to comply with Request Nos. 3, 4, 9, and 10 in the EEOC's subpoena to Aon Consulting on the condition that the EEOC enter a written confidentiality agreement barring the EEOC from disclosing responsive documents to the charging parties during the course of the investigation and requiring the EEOC to return the documents and all copies no later than: (a) 180 days after the EEOC closes its investigation of the charges of the identified charging parties or (b) the final conclusion of any litigation by the identified charging parties arising from this investigation, whichever is later. Counsel shall confer on a suitable form of order and shall submit no later than May 17, 2001, either an agreed order (and agreement as to form will not constitute waiver of positions argued in these cases) or separate proposed forms of an order. The court will hold a conference and/or hearing on May 29, 2001, at 4:30 p.m. in Room 330, U.S. Courthouse, Indianapolis, Indiana, to resolve any dispute as to form.

So ordered.

---

**2.** Permitting the EEOC to maintain the documents in its files for 180 days following the conclusion of its investigations will provide ample time for the charging parties to seek documents through appropriate channels (through which effective protective measures may be imposed). In fact, a charging party's right to request the documents likely will expire before 180 days have passed, assuming the timely issuance and receipt of a Notice of Right to Sue. The court sets the deadline at 180 days to avoid the type of disputes over when notice was actually received that sometimes arise in calculating the 90-day deadline for filing suit.